## Beck *versus* The City of Philadelphia.

1. It was *held* that it was not the intention of Stephen Girard, in the 22d section of his will, to appropriate any part of the fund of $500,000, devised by him, to the charge of cleansing the docks along Delaware Avenue in the City of Philadelphia; it was his purpose that that duty was to be performed by *the owners of the wharves*. Each wharf owner is to keep in order his own wharf, and to pay the expense of cleansing the adjoining dock in proportion to the number of feet of his lot or landing adjoining on each side of the dock. This duty was imposed on them by the Acts of 1698 and 1700.

2. There is nothing in the 23d section of the will of the said testator to affect the independent construction of the 22d section of the will, or which annexed, as a condition to the devise to the Commonwealth of $300,000, the passage of laws to enforce the liabilities of wharf owners: the 23d section had reference, 1st, to the improvement of Delaware Avenue; 2d, the removal and prohibition of wooden buildings in the city of Philadelphia; and 3d, to the passage of laws for the widening, &c., of Water street, and other improvements specified in that section.

APPEAL from the decree of ROGERS, Justice, made at Nisi Prius.

Henry P. Beck and Charles F. Beck filed their bill in equity against the Mayor, Aldermen, and Citizens of Philadelphia, wherein it was set forth, That they were the owners of certain wharves on the Delaware front of the city of Philadelphia, and the docks adjoining thereto:

That Stephen Girard, by his will, dated 16th February, 1830, among other things, did give and bequeath unto The Mayor, Aldermen, and Citizens of Philadelphia, their successors and assigns, as follows:—

"XXII. And as to the further sum of *Five Hundred Thousand Dollars*, part of the residue of my personal estate, in trust, to invest the same securely, and to keep the same so invested, and to apply the income thereof exclusively to the following purposes: that is to say—

"1. To lay out, regulate, curb, light, and pave a passage or street, on the east part of the city of Philadelphia, fronting the river Delaware, not less than twenty-one feet wide, and to be called *Delaware Avenue*, extending from Vine to Cedar street, all along the east part of Water street squares, and the west side of the logs, which form the heads of the docks, or thereabouts; and to this intent to obtain such Acts of Assembly, and to make such purchases or agreements, as will enable the Mayor, Aldermen, and Citizens of Philadelphia to remove or pull down all the buildings, fences and obstructions which may be in the way, and to prohibit all buildings, fences, or erections of any kind to the eastward of said Avenue; to fill up the heads of such of the docks as may not afford sufficient room for the said street; to compel the owners of

[Beck *v.* City of Philadelphia.]

wharves to keep them clean, and covered completely with gravel or other hard materials, and to be so levelled that water will not remain thereon after a shower of rain; to completely clean .and keep clean all the docks within the limits of the city, fronting on the Delaware; and to pull down all platforms carried out, from the east part of the city over the river Delaware, on piles or pillars.

" 2. To pull down and remove all wooden buildings, as well those made of wood and other. combustible materials, as those called brick-paned, or frame buildings filled in with bricks, that are erected within the limits of the city of Philadelphia, and also to prohibit the erection of any such building, within the said city's limits, at any future time.

" 3. To regulate, widen, pave and curb Water street, and to distribute the Schuylkill water therein, upon the following plan, that is to say—that Water street be widened east and west from Vine street, all the way to South street, in like manner as it is from the front of my dwelling to the front of my stores on the west side of Water street, and the regulation of the curb-stones continued at the same distance from one another as they are at present opposite to the said dwelling and stores, so that the regulation of the said street be not less than thirty-nine feet wide, and afford a large and convenient footway, clear of obstructions and encumbrances of every nature, and the cellar doors on which, if any shall be permitted, not to extend from the buildings on the footway more than four feet; the said width to be increased gradually, as the fund shall permit, and as the capacity to remove impediments shall increase, until there shall be a correct and permanent regulation of Water street, on the principles above stated, so that it may run north and south as straight as possible. That the ten feet middle alley, belonging to the public, and running from the centre of the east squares to Front street, all the way down across Water street to the river Delaware, be kept open and cleansed as city property, all the way from Vine to South street; that such part of each centre or middle alley as runs from Front to Water street, be arched over with bricks or stone, in so strong a manner as to facilitate the building of plain and permanent stone steps and platforms, so that they may be washed and kept constantly clean; and that the continuance of the said alleys, from the east side of Water street, be curbed all the way to the river Delaware, and kept open for ever. (I understand that those middle or centre alleys were left open in the first plan of the lots, on the east front of the city, which were granted from the east side of Front street to the river Delaware, and that each lot on said east front has contributed to make those alleys, by giving a part of their ground in proportion to the size of each lot; those alleys were in the first

[Beck *v.* City of Philadelphia.]

instance, and still are, considered public property, intended for
the convenience of the inhabitants residing in Front street, to go
down to the river for water and other purposes; but, owing to
neglect or to some other cause, on the part of those who have had
the care of the city property, several encroachments have been
made on them by individuals, by wholly occupying, or building
over them, or otherwise, and in that way the inhabitants, more par-
ticularly those who reside in the neighbourhood, are deprived of the
benefit of that wholesome air, which their opening and cleansing
throughout would afford.)    That the iron pipes, in Water street,
which, by being of smaller size than those in the other streets, and
too near the surface of the ground, cause constant leaks, particu-
larly in the winter season, which in many places render the street
impassable, be taken up and replaced by pipes of the same size,
quality, and dimensions in every respect, and laid down as deeply
from the surface of the ground, as the iron pipes which are laid
in the main streets of the city; and as it respects pumps for
Schuylkill water and fire-plugs in Water street, that one of each
be fixed at the south-west corner of Vine and Water streets, and
so running southward, one of each near the steps of the centre
alley, going up to Front street; one of each at the south-west
corner of Sassafras and Water street; one of each near the steps
of the centre alley going up to Front street, and so on at every
south-west corner of all the main streets and Water street, and of
the centre alleys of every square, as far as South or Cedar street;
and when the same shall have been completed, that all Water
street shall be repaved by the best workmen, in the most complete
manner, with the best paving water-stones, after the height of the
curbstones shall have been regulated throughout, as well as the
ascent and descent of the street, in such manner as to conduct
the water through the main streets and the centre alleys to the
river Delaware, as far as practicable; and whenever any part of
the street shall want to be raised, to use nothing but good paving
gravel for that purpose, so as to make the paving as permanent as
possible.    By all which improvements, it is my intention to place
and maintain the section of the city above referred to, in a con-
dition which will correspond better with the general cleanliness and
appearance of the whole city, and be more consistent with the
safety, health, and comfort of the citizens.    And my mind and
will are, that all the income, interest, and dividends of the said
capital sum of five hundred thousand dollars, shall be yearly, and
every year, expended upon the said objects, in the order in which
I have stated them, as closely as possible, and upon no other ob-
jects until those enumerated shall have been attained: and, when
those objects shall have been accomplished, I authorize and direct
the said, the Mayor, Aldermen, and Citizens, to apply such part

[Beck *v.* City of Philadelphia.]

of the income of the said capital sum of five hundred thousand dollars, as they may think proper, to the further improvement, from time to time, of the eastern or Delaware front of the city."

That the defendants took upon themselves the execution of the trust, and received from the residuary estate of the testator the sum of five hundred thousand dollars: and appropriated the same to the purposes of the trust set forth in the above extract of the will of Mr. Girard.

That the testator directed that the income of this fund should be applied to objects arranged in three classes, and in the order of those classes: and that they submit that it is a violation of the object of the testator, and a breach of trust to apply any portion of the income to the objects enumerated in classes two and three at the expense and in derogation of the objects mentioned in the first class.

They submit that one of the purposes mentioned in the first class is, " to completely clean, and keep clean all the docks within the limits of the city fronting on the Delaware."

That their docks, in the spring of the year 1847, were, by the quantity of matter poured into them by the drains and streets of the city, and the accumulation of mud from the natural sediment of the river, so filled up and obstructed, as not to afford the necessary and proper accommodation for vessels engaged in commerce, and required immediate cleaning.

That they, with other wharf owners, joined in a memorial to the Select and Common Councils of the city of Philadelphia, praying them to apply a portion of the income of the said trust fund to the cleansing of the docks on the eastern front of the city. That the said memorial not having received any attention from those bodies, they addressed a written communication to them, stating the pressing nature of the exigency, and their determination to proceed to cleanse the docks themselves, and look to the defendants, as trustees of the said fund, for remuneration.   And, accordingly, did proceed so to cleanse them.

The complainants pray that the defendants may be decreed to pay them the sum disbursed in cleansing their docks as aforesaid. And, also, that they may be decreed to apply such portion of the income of the said fund as may be necessary, to the cleansing and keeping clean of the said docks for all time hereafter.

To this bill the defendants answered, that the said testator, in his will, did give and bequeath to the Commonwealth of Pennsylvania as follows:

" I give and bequeath to the Commonwealth of Pennsylvania, the sum of *Three Hundred Thousand Dollars,* for the purpose of internal improvements by canal navigation, to be paid into the state treasury by my executors, as soon as such laws shall have

been enacted by the constituted authorities of the said Commonwealth as shall be necessary, and amply sufficient to carry into effect, or to enable the constituted authorities of the city of Philadelphia to carry into effect the several improvements above specified; namely, 1. Laws, to cause Delaware Avenue, as above described, to be made, paved, curbed, and lighted; to cause the buildings, fences, and other obstructions now existing, to be abated and removed, and to prohibit the creation of any such obstruction to the eastward of said Delaware Avenue. 2. Laws to cause all wooden buildings, as above described, to be removed, and to prohibit their future erection within the limits of the city of Philadelphia. 3. Laws providing for the gradual widening, regulating, paving, and curbing Water street, as hereinbefore described, and also for the repairing the middle alleys, and introducing the Schuylkill water and pumps as before specified; all which objects may, I persuade myself, be accomplished on principles at once just in relation to individuals, and highly beneficial to the public; the said sum, however, not to be paid, unless said laws be passed within one year from my decease."

That they applied to the legislature of the Commonwealth for the enactment of laws to enable them to carry into effect the improvements directed by the testator, and to execute the trusts declared in said will.

And that the General Assembly on the 24th day of March, 1832, by an Act entitled "An Act to enable the Mayor, Aldermen, and Citizens of Philadelphia to carry into effect certain improvements, and execute certain trusts," authorized them by ordinance, lawfully enacted, to lay out, regulate, curb, light, and pave a passage or street not less than twenty-one feet wide on the east part of the city of Philadelphia, fronting the river Delaware; and also to lay out Water street in the said city anew, in such manner that the same should be of a uniform, or as near as might be, uniform width throughout, of not less than thirty-nine feet, if practicable, and to keep the same open for ever as a public and common highway: and to regulate, adjust, and determine the easternmost line to which wharves might thereafter be constructed on the river Delaware, fronting the said city: and to fix and decide on the levels of all wharves fronting the said city, and to declare the regulation thereof; and to require the owners thereof to pave the same or lay them with gravel, according to such regulation, so as effectually to drain and pass off the water from the same, and to require all persons owning and occupying or using docks or wharves to cleanse the same, and to keep the same in repair, and to prescribe the form, materials, and character of workmanship of all wharves hereafter to be constructed, and to require all platforms projecting into the river Delaware, and supported on

[Beck *v.* City of Philadelphia.]

piles, pillars, or piers, to be removed, and to prohibit the future construction of any such projecting platforms; and to require the removal, and prohibit the future construction of all buildings, fences, or other obstructions, to the eastward of said Delaware Avenue, and generally to devise, ordain, and execute whatever other things should, by the defendants, be deemed necessary or convenient for the good arrangement, security, and government of the said wharves. And that they were further authorized by the said Act to pass ordinances prohibiting the construction within the said city of framed or brick-paned or other buildings, the walls whereof not composed wholly of incombustible materials; and to remove and abate any building, erection, or obstruction whatever, which by virtue of said Act, or by any ordinance to be passed by virtue of it, might be declared a nuisance. That said Act of Assembly also provided the mode by which the damages which should be sustained by the owner of any property taken for or injured by the said improvements or any of them, should be ascertained, and provided for the payment thereof by the defendants, out of the income of the said sum of five hundred thousand dollars so bequeathed as aforesaid. See Acts of 1831–2, p. 176, &c.

That they passed ordinances to lay out the said Delaware Avenue, to lay out Water street anew, and to prohibit the construction of frame buildings.

That they are still engaged in assessing the damages caused by the laying out of Water street anew, and that the income of the said fund will be required for that object for several years to come.

That they have not cleansed the docks fronting the city on the Delaware, nor have they appropriated any portion of the income of said fund for such purpose, because they have been advised that they are not allowed so to appropriate such income; but that they are required by said will to apply the same to lay out, light, curb, regulate, and pave Delaware Avenue; to cause the wooden buildings in the city to be removed, and to regulate, widen, pave, and curb Water street; and are not permitted to appropriate any portion of said income to any other objects until these are completed.

That the true construction of the said will requires them to obtain such Acts of Assembly as, among other things, will enable them to compel the owners of wharves to completely clean, and keep the docks clean, on the Delaware river, fronting the city.

And that if they are required by the said will to expend a portion of the income of the fund to the cleansing of the docks, which they deny, that the complainants had no authority to cleanse them of their own motion, and compel the defendants to reimburse them the expense out of the fund; but that if they are so bound to cleanse the docks, they are to be the judges of the necessity,

K

the time when the same should be done, and the price to be paid therefor.

That the legislature having authorized them to pass laws to compel the owners of wharves to cleanse the docks at their own expense, they are released, if they were ever liable, which they deny, from all obligation, wheresoever arising, to cleanse them.

His honor, ROGERS, J., at Nisi Prius, decreed *pro forma :*

And now, to wit, March 25, 1850, the cause having come on to be heard upon the pleadings and proof, it is ordered, declared, and decreed by the court that the sum of $500,000, bequeathed by the said Stephen Girard, in the 22d section of said will, mentioned in the bill, is applicable to the objects mentioned and set forth by the testator, in the order set down and declared in the said will. That a trust is thereby created of and respecting said fund; and that the defendants having accepted the said trust, are bound to apply the said fund to the cleansing and keeping clean the docks within the limits of said city, fronting on the river Delaware, before that any part of said fund is applied to any of the purposes or objects mentioned in the second and third clauses of the twenty-second section of the said will. And it appearing to the court that the defendants have in their hands funds sufficient to pay for and reimburse the complainants the expenses which have been by them incurred in cleansing the docks, mentioned in the bill, it is ordered that the defendants do pay to the said plaintiffs, out of the income of said fund, the sums of $1110, with interest from the following days, on the following sums respectively, &c., &c. : together with the costs of this suit.

From this decree the defendants appealed, and the following assignments of error were filed :—

1. The judge erred in decreeing that the defendants are bound to apply the fund of $500,000, bequeathed by Stephen Girard, in the 22d item of the will mentioned in said bill, to the cleansing and keeping clean the docks within the limits of the city of Philadelphia, fronting on the river Delaware.

2. Because the judge erred in decreeing that the defendants pay to the plaintiffs, out of the income of the said fund, the amounts mentioned in said decree.

3. Because the judge erred in not dismissing the bill of the plaintiffs.

The case was argued by *Olmsted* for the city; *Balch*, with whom was *McMurtrie*, for complainants; *Williams*, in reply.

The opinion of the Court was delivered December 15, by

[Beck *v.* City of Philadelphia.]

LEWIS, J.—The question for decision in this case is whether any part of the income of the fund of $500,000 given to the city authorities in trust for the objects specified in the 22d section of the will of the late Stephen Girard, can be rightfully applied to the expenses of cleansing the docks on the Delaware front of the city ?

The three objects of the testator's bounty, enumerated in the 22d section, are: 1st. The laying out of Delaware Avenue; 2d. The removal of all wooden buildings within the city; and 3d. The widening of Water street.    Each of these was directed to be accomplished in the order in which they are named.

The first object to which the income of the fund is directed to be applied is, the laying out, regulating, curbing, lighting, and paving a street on the east part of the city of Philadelphia, to be called Delaware Avenue.    In order that this object might be accomplished, it was necessary that the city authorities should acquire powers from the legislature, and rights from individuals, to enable them to remove, or pull down, all the buildings, fences, and obstructions, which might be in the way; to prohibit all buildings, fences, or erections of any kind to the eastward of the avenue, and to fill up the heads of such of the docks as might not afford sufficient room for the street to be laid out.

As the proposed improvement facilitated access to the wharves and docks, and greatly increased the commercial advantages of that part of the city, it was reasonable, and necessary to the full enjoyment of those advantages, that the individuals who would derive the greatest benefit from the improvement, and who were bound to keep the docks and wharves in proper condition for their appropriate uses, should be compelled to fulfil their obligations in that respect.    And the confidence which the testator reposed in the authorities of the city, as shown throughout his will, sufficiently indicates the reason for his desire that those authorities should be clothed by the legislature with the necessary power to enforce these obligations.    We think that it was not the intention of the testator to appropriate any part of the fund to defray the expenses of cleansing the docks.   On the contrary, we think it sufficiently manifest that his intention was to compel the owners of the wharves to perform this duty, and also to keep their wharves in order, and to remove the platforms projecting therefrom over the river, supported by piles.    This must, of course, be understood distributively, according to the existing liabilities of the parties.    Each wharf-owner to keep his own wharf in order, to remove the platforms projecting therefrom, and to defray the expenses of cleansing the adjoining dock in proportion to the number of feet of his lot or landing adjoining on each side of the dock.    This duty was imposed upon the owners of wharves, by the laws of 1698

[Beck *v.* City of Philadelphia.]

and 1700; and the Act of 1803 made it the duty of the Master Warden to superintend the execution of these laws. Although the drainage of the city may largely contribute to the silting of the docks, it must be remembered that this drainage is but the natural discharge of deposits, which, but for the obstructions created by the wharves, would find their way, without impediment, to their appropriate receptacle, the ocean. And the increase in quantity, arising from the business at the wharves and the drainage of a large and populous city, is but the result of that commerce which gives to the wharves their chief value. It is therefore a principle of obvious justice that those who receive the profits of these structures, erected upon the public domain, should bear the charge of keeping them in suitable condition for the uses for which they were constructed. It is to be presumed that the testator was perfectly aware of this just and legal liability of the owners of wharves, and we see no sufficient indication in his will of an intention to take the burthen from the shoulders of those who were so justly bound to bear it, and thus to apply to private advantage a fund which could be more usefully employed in promoting objects of general utility.

The objection that this construction imposes upon owners of wharves " a *joint* obligation to clean *all* the docks," and thus conveys a meaning that is extravagant, is nothing more than an endeavor to support one misconstruction of the will by another, quite as far from the true intention of the testator as the first. It rests upon a verbal criticism certainly not entitled to controlling influence in the construction of instruments supposed to be frequently prepared in the hour of extremity, without the assistance of professional advice. It is certainly true that there is a looseness of expression in the instrument before us; but this only demands, with more urgency, that the general intent shall overbear small objections of expression and punctuation. There is as much propriety in understanding the testator to speak distributively in reference to the docks and platforms as in regard to the wharves.

The wharf, the dock, and the platform are so connected with each other in their construction and in their uses, that they may be regarded, for many purposes, as identical. The dock is useless without the wharf; the latter is of no value independent of the dock; the platform is but an extension of the wharf; and the owner of the wharf receives the profits of the whole. Why then should the charges of keeping the whole of this structure in proper condition for its uses be divided? Why should a stranger assume the duty of keeping the docks in order, while the owner, who receives all the profits of the dock and the wharf, is only required to keep the wharf in order? An unequivocal declaration of such

intention would, of course, be regarded and enforced; but, in our opinion, no such intention is expressed.

The direction to apply the income of the fund to three objects, in the order in which they are specified, excluding the two last from any participation until the first shall be accomplished, indicates that the first, in the view of the testator, was one which would be accomplished within some determinate period; but, according to the construction claimed by the appellees, the fund must be applied to a charge of perpetual obligation—to an object which never can be accomplished so long as the rains descend, and the streams pursue their courses to the ocean.

There is nothing in the 23d section of the will to change the legitimate and independent construction of the 22d. Taking both together, we see that though the testator *desired* the city authorities to obtain power to enforce the liabilities of the owners of wharves, yet he did not consider that an object of sufficient importance to make it one of the conditions of his legacy of $300,000 to the state. He intended to specify, among those conditions, only such laws as were "necessary to carry into effect the several improvements designated in the section immediately preceding. An Act to authorize the city corporation to compel the owners of wharves to keep their docks in order, and to remove their platforms, was not in that category; and of course was not named as one of the considerations of the legacy to the state.

The act of 1832, in complying not only with the conditions upon which the legacy was given, but with the wishes of the testator as expressed in the 22d section, may be regarded as the enlightened judgment of a co-ordinate branch of the government, in the exercise of its legislative functions of legislation, in favor of the construction now given to the will by this court. This construction is in accordance with the justice of the case, and by preventing the application of the fund to objects of private advantage which may be otherwise attained, and securing it to those of public and general benefit, we are carrying out what were manifestly the great purposes of the testator.

It may not be necessary, at present, to express an opinion respecting the disposition of the fund, after the three objects enumerated in the 22d section shall have been accomplished; but it would certainly be well for those intrusted with its management to pause before they apply it to purposes which the testator intended to accomplish by enforcing the obligations of the wharf-owners, and thus prevent its application to the "*further* improvement of the eastern front of the city." If the intention of the testator was to secure one beneficial object by compelling the performance of individual duties, and others by the application of his

[Beck *v.* City of Philadelphia.]

own funds, the discretion of the trustees must be controlled by that intention.

> The decree at Nisi Prius is reversed; and it is ordered and decreed that the bill be dismissed at the costs of the appellees.